IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

JOSEPH C.,[1]                                                            Case No. 1:22-cv-00827-HL

            Plaintiff,                                          **OPINION AND ORDER**

     v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

            Defendant.

_____

HALLMAN, United States Magistrate Judge:

      Plaintiff Joseph C. brings this action under the Social Security Act (the "Act"), 42 U.S.C.

§ 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security

("Commissioner"). The Commissioner denied plaintiff's application for Social Security Income

("SSI") under Title II of the Act. 42 U.S.C. § 401 *et seq.* For the following reasons, the decision

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name
for non-governmental parties and their immediate family members.

of the Commissioner is REVERSED, and this case is REMANDED for immediate calculation and payment of benefits.

## STANDARD OF REVIEW

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation marks omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation").

## BACKGROUND

### I.    Plaintiff's Application

Plaintiff alleges disability based on schizoaffective disorder, bi-polar disorder, anxiety, and depression. Tr. 240. At the time of his alleged onset date, he was 20 years old. Tr. 23, 231. Plaintiff has a high school education and no past relevant work. Tr. 23.

Plaintiff protectively applied for SSI on July 13, 2018, alleging an onset date of July 13, 2018. Tr. 14, 231. His application was denied initially on August 21, 2019, and on reconsideration on March 23, 2020. Tr. 141-45, 150-51. Plaintiff subsequently requested a hearing, which was held on February 16, 2021, before Administrative Law Judge ("ALJ") Matt Kawalek. Tr. 88. Plaintiff appeared and testified at the hearing, represented by counsel; vocational expert ("VE") Doug Prutting also testified. Tr. 86. On June 21, 2021, the ALJ issued a decision denying plaintiff's claim. Tr. 11-24. Plaintiff requested Appeals Council review, which was denied on April 11, 2022. Tr. 1-4. Plaintiff then sought review before this Court.[2]

## II.    Sequential Disability Process

The initial burden of proof rests on the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.  At step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§

---

[2] The parties have consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636. (ECF 6).

404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) & 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141. At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c).

At step four, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n. 5.

Finally, at step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## III.    The ALJ's Decision

At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity after his alleged onset date through the date of the ALJ's decision. Tr.16.

At step two, the ALJ determined that plaintiff had the following severe impairments: schizoaffective disorder, an affective disorder (called either depression or bipolar II disorder), an anxiety disorder (variably called anxiety, panic disorder, social anxiety disorder, or generalized anxiety disorder), and posttraumatic stress disorder ("PTSD"). Tr. 16-17.

At step three, the ALJ determined that plaintiff's impairments did not meet or medically equally the severity of a listed impairment. Tr. 17. The ALJ then resolved that plaintiff had the residual function capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations:

> [He] is limited to understanding, remembering, carrying out, and maintaining attention and concentration on no more than simple tasks and instructions, defined specifically as those job duties that can be learned in 30 days' time. He can sustain only ordinary routines and make no more than simple, work-related decisions. He can tolerate no more than occasional interaction with coworkers and supervisors, cannot perform team or tandem work, and can have no interaction with the general public.

Tr. 19

At step four, the ALJ found that plaintiff had no past relevant work, thus he could not perform any past relevant work. Tr. 23.

But at step five—considering plaintiff's age, education, work experience, and RFC—the ALJ found that a significant number of jobs existed in the national economy that plaintiff could perform, including work as a hand packager, industrial cleaner or sweeper, and floor waxer. Tr. 23-24. Thus, the ALJ concluded that plaintiff is not disabled. Tr. 24.

## IV.    Additional Evidence

After the ALJ determined plaintiff was not disabled under the Act, plaintiff submitted additional evidence to the Appeals Council. Tr. 2.[3] This evidence consisted of detailed treatment

---

[3] Citations to "Tr." are to the Administrative Record. (ECF 11).

records from plaintiff's treating psychiatrist dating from December 30, 2019, through March 20, 2021. Tr. 2. The Appeals Council considered the evidence and concluded it did not justify changing the ALJ's decision. Tr. 2.

## DISCUSSION

Plaintiff argues that the ALJ committed the following errors: (1) the ALJ improperly rejected the medical opinion evidence of psychiatrist Curt Sturos, M.D.; and (2) the ALJ failed to provide clear and convincing reasons to reject plaintiff's symptom testimony.[4] Pl. Br. 14. For the following reasons, the Commissioner's decision denying plaintiff's claim is reversed, and this case is remanded for calculation and payment of benefits.

## I.    Additional Evidence Rejected by the Appeals Council

Under 20 C.F.R. § 404.970(a)(5), the Appeals Council will review a case at a party's request where it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." *Id.* The Appeals Council will only consider additional evidence . . . if [the claimant] show[s] good cause for . . . submitting the evidence." *Id.* at § 404.970(b).  "[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Brewes v. Commissioner of Social Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012). But if "the Appeals Council only looked at the evidence and determined it did not meet the standard for consideration," then "the new evidence did not become part of the record, and [the

---

[4] Plaintiff also argues that the ALJ improperly rejected the lay witness testimony of plaintiff's mother. Pl. Br. 25-28. Because the Court remands the case for immediate payment of benefits due to other reasons, the Court does not address this argument.

court] may not consider it." *Amor v. Berryhill*, 743 F. App'x 145, 146 (9th Cir. 2018) (citing 20

C.F.R. § 416.1470(b), and *Lowry v. Barnhart*, 329 F.3d 1019, 1024 (9th Cir. 2003)).

       Plaintiff submitted additional evidence to the Appeals Council. Tr. 2, 30-85. The Appeals

Council rejected the new evidence for the following reasons:

> You submitted medical records from Optimal Behavior Health dated December 30,
> 2019 through March 20, 2021 (56 Pages). We find this evidence does not show a
> reasonable probability that it would change the outcome of the decision. We did
> not exhibit this evidence.

       District Courts in this Ninth Circuit have reached differing conclusions as to whether this

language indicates that the Appeals Council considered the new evidence (making it part of the

administrative record and able to be considered by the court) or simply looked at it to determine

if it meets the standard for consideration (not making it part of the record nor reviewable by the

court). *See Kimberly B. v. Comm'r, Soc. Sec. Admin.*, No. 3:22-CV-00436-YY, 2023 WL

407668, at *6-7 (discussing issue). Here, however, the defense concedes that the new evidence

was submitted to and considered by the Appeals Council, making it part of the record to be

considered by this Court. Def. Br. 12-13 (citing *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d

1157, 1163 (9th Cir. 2012)). Thus, the Court will consider the new evidence as part of the

administrative record and review the ALJ's decision in light of this new evidence.

## II.    Medical Opinion Evidence of Dr. Sturos

     *A.    Standard of Review.*

       Under the revised regulations[5], the ALJ must "articulate . . . how persuasive [they] find

all of the medical opinions" and "explain how [they] considered the supportability and

---

[5] Plaintiff's application was filed on or after March 27, 2017; thus, the ALJ was not tasked with
"weighing" medical opinions but rather must determine which are most "persuasive." 20 C.F.R.
§§404.1520c(a)-(b); 416.920c(a)-(b). As the Ninth Circuit recently commented, the new
regulations displace the "longstanding case law requiring an ALJ to provide" different levels of

consistency factors." *Id.* At a minimum, "this appears to necessitate that an ALJ specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion." *Id.* An ALJ is "not required to explain how they considered other secondary medical factors, unless they find that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical." *Id.* (*citing* 20 C.F.R. §§ 404.1520c(b)(3); 416.920c(b)(3)). An ALJ's decision to discredit a medical opinion must be supported by substantial evidence. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). "Under the revised regulations . . . a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion." *Woods*, 32 F.4th at 792.

> B.     *Dr. Sturos's Opinion.*

On September 18, 2018, the Social Security Administration provided a mental disorder questionnaire form to be completed by Dr. Sturos. Tr. 337. Dr. Sturos wrote that he first treated plaintiff on June 9, 2015, continuing on a weekly to monthly basis. Tr. 331. Dr. Sturos provided plaintiff's diagnoses of schizoaffective disorder, bipolarism, paranoia, autistic features, mania, depression, and anxiety. Tr. 327, 331. Dr. Sturos wrote that plaintiff had chronic anxiety "since teens" and suffered from panic attacks, as well as suicidal ideation and trouble sleeping more than 5 hours. Tr. 327. He also provided that plaintiff suffers from daily auditory and visual hallucinations, paranoia, and inability to focus or concentrate. Tr. 328. Dr. Sturos opined that plaintiff was guarded and anxious, "slow to warm-up and trust others", and worked well with Dr. Sturos only "after regular visits and alliance-building" therapy. Tr. 328. Dr. Sturos opined that

---

reasoning (i.e., "clear and convincing" or "specific and legitimate") based on a hierarchy of medical sources. *Woods*, 32 F.4th at 787.

plaintiff needed reminders to attend appointments, required parental support for "housing, financial, structure, emotional support, [and] reminders" and had "variable ability to follow through with treatment plan" without parental support. Tr. 327, 329, 330. Dr. Sturos wrote that plaintiff's condition possibly could improve if they could lower his residual symptoms, but plaintiff "[w]ould have a harder time transitioning to work right now, but could likely tolerate and do well in a supported/sheltered work program tailored to his symptoms/needs. Tr. 330-31.

On June 9, 2020, Dr. Sturos provided answers to questions from plaintiff's counsel and a Medical Source Statement form. Tr. 382-89. He wrote that he has, on average, seen plaintiff weekly or once a month since Spring 2015, depending on the severity of plaintiff's "severe depressive and psychotic symptoms[,]" and managed plaintiff's medications, vitamins, therapy, pharmacogenomic testing, and lifestyle strategies. Tr. 382. He continued to diagnosis plaintiff with schizoaffective disorder, bipolarism, general anxiety and depression disorder, panic attacks, and Aspergers/Autism with signs of psychosis (daily auditory and visual hallucinations and paranoid delusions), depression, mania, and anxiety. Tr. 383. Dr. Sturos wrote that these findings came from "patient history, charts, scales, family observations, labs, genetics, and mental status exams by [Dr. Sturos]." Tr. 383. He opined that plaintiff's symptoms "preclude working gainfully" or attending a school or normal social setting because plaintiff's symptoms increase to "severe levels" and "he would not likely be able to sustain work at [a] 40 hour a week schedule." Tr. 383.

On his Medical Source Statement form, Dr. Sturos concluded that plaintiff had: (1) a mild restriction in his ability to make judgments on complex work-related decisions; (2) moderate limitations in carrying out simple instructions, his ability to make judgments on simple work-related decisions, and to understand and remember complex instructions; and (3) a marked

limitation in carrying out complex instructions. Tr. 386. Dr. Sturos further concluded that

plaintiff had marked and extreme limitations in interacting appropriately with the public, with

supervisors, with coworkers, and responding appropriately to usual work situations and changes

in routine work settings. Tr. 387.

On February 3, 2021, Dr. Sturos provided a "very detailed psychiatric summary" for

plaintiff. Tr. 696-99. Dr. Sturos described plaintiff as having "Schizoaffective disorder (Bipolar,

mixed type); Generalized anxiety Disorder; Panic Disorder; PTSD symptoms (related to bullying

in school and witnessing two fatal accidents at age 12); Autism features." Tr. 697. Dr. Sturos

explained that plaintiff had "some very significant, persistent, and severe difficulties in

psychosocial functioning" that included difficulties with school and employment. Tr. 697. Dr.

Sturos noted that, four years prior to the assessment, plaintiff "had one part-time job at a

restaurant for two weeks but ended up having a significant exacerbation of suicidal depression

that lasted several months", and "otherwise has not been able to work due to his psychiatric

symptoms), social, family, and recreation domains." Tr. 697. Plaintiff also "had several

actionable vitamin deficiency-related medical conditions that have further complicated his

psychiatric treatment in terms of being both potential contributors in relation to some of his

presenting symptoms (ex: depression, anxiety, focus problems) and also being risk factors for his

treatment-resistance history with several standard psychiatric treatments." Tr. 697. Dr. Sturos

stated that plaintiff's "psychotic symptoms became more frequent, severe, and even more

functionally-impairing as of December 2017, at which point he was experiencing these three

kinds of symptoms [auditory and visual hallucinations and paranoid delusions] daily, several

times a day." Tr. 698. Dr. Sturos also found that, "[o]ver . . . 10 months, [plaintiff's] psychotic,

depressive, and anxiety/panic have modestly increased over previous years in terms of overall

intensity and frequency[.]" *Id.* Dr. Sturos specifically noted that, in the last year, "[plaintiff's] overall level of functioning has also regressed from the previous year, related to his increase in several kinds of chronic psychiatric symptoms" and stated that "[plaintiff] now experiences severe, significant, and multi-domain functional impairments in terms of inability to work . . . [and in] academic . . ., social . . ., regular, and emotional regulation domains." *Id.*

C.    *ALJ's Decision*

The ALJ stated that he found "the opinions of Dr. Sturos unpersuasive given the lack of supporting treatment notes, objective findings or other medical evidence." Tr. 22. Although Dr. Sturos "provided a summary of [plaintiff]'s history and limitations" and "completed a checkbox form and found the claimant had moderate to extreme limitations", he "did not provide treatment notes to support his conclusions despite requests and therefore he provided no support of his findings." Tr. 22 The ALJ found that "Dr. Sturos shows a poor understanding of the evidentiary requirements of the Social Security disability process based on his refusal to provide treatment records and/or his belief that the records would not be reviewed and analyzed." Tr. 22.

D.    *Additional Evidence*

Plaintiff submitted additional evidence after the hearing to the Appeals Council. This evidence included detailed treatment records from plaintiff's appointments with Dr. Sturos from December 30, 2019, through March 30, 2021. Tr. 30-80. These records detail plaintiff's reoccurring hallucinations, anxiety, depression, sleep inconsistencies, and isolation. Tr. 35, 40, 45, 50, 55, 60, 65, 70-71, 75-76. These records also show that plaintiff's condition worsened when his appointments were spread further apart, resulting in higher levels of anxiety and both visual and audible hallucinations. Tr. 75-76. Dr. Sturos' records also note that plaintiff's only method of distraction from his daily psychosis was playing guitar, he required more prescriptions

to manage his anxiety and depression, and plaintiff continuously did not heed Dr. Sturos'
recommendations to take certain supplements or obtain new lab results. Tr. 35, 40, 45, 50, 55,
60, 65, 70-71, 75-76.

     *E.*     *Analysis.*

     The Court finds that the ALJ committed harmful error in evaluating Dr. Sturos' opinion.
First, the ALJ found Dr. Sturos' opinion unpersuasive because Dr. Sturos provided a "checkbox
form" and "summary" with "no support of his findings." Tr. 22. Looking at the record as a
whole, however, Dr. Sturos provided extensive details of his treatment history with plaintiff,
including his diagnoses, treatment recommendations, and plaintiff's multitude of symptoms. As
noted above, the evidence from Dr. Sturos, including the additional evidence of treatment
records, provided sufficient detail to support Dr. Sturos' opinion that plaintiff is unable to work.

     Second, the ALJ complained of Dr. Sturos "refus[ing] to provide treatment records"
before the hearing. Tr. 22. However, when the Social Security Administration requested records
from Dr. Sturos, the request specifically stated that a "narrative report, copies of [his] records, or
completion of any attached forms [i.e. the Mental Questionnaire] *are equally satisfactory*." Tr.
337 (emphasis added). Dr. Sturos provided a detailed response to the questionnaire and several
narrative reports per these requests, as the Administration requested. "An ALJ may reject the
opinion of a physician if it is brief, conclusory, and unsupported by clinical findings." *Lehrman
v. Barnhart,* 77 Fed. App'x 421, 422 (9th Cir. 2003). That is not the case here. Dr. Sturos'
provided documents were detailed, including his relationship with and treatment of plaintiff,
plaintiff's mental history and symptoms, and his findings from evaluating plaintiff for several
years. The additional evidence of Dr. Sturos' treatment notes further supports that the ALJ erred
in disregarding Dr. Sturos' opinion due to providing evidence the Administration requested that

was "equally satisfactory" but not good enough for the ALJ. Tr. 337, 92 ("These are equally satisfactory, which they are not for me.").

Third, the ALJ stated that the state psychological consultants were "better equipped" to make determinations involving plaintiff than Dr. Sturos. The ALJ found the state psychological consultants' opinions "somewhat persuasive," and the state consultants opined that plaintiff's record did not have evidence to substantiate his claim because, specifically, there were no treatment notes. Tr. 21, 118, 133-34. However, as noted above, Dr. Sturos' provided evidence included sufficient detail to substantiate his opinions. Per the new regulations, supportability and consistency are the most important factors when evaluating medical opinion evidence. 20 C.F.R. § 404.1520c(2). Dr. Sturos' opinions were supported.

Considering consistency, Dr. Sturos' opinion was consistent with Dr. Shield's opinion. Dr. Shields opined that plaintiff's social function, pace, and persistence are "negatively impacted by his anticipatory anxiety, avoidant behavior, social anxiety disorder symptoms, and depressive withdrawal . . . [and] his cyclic mood spectrum symptoms, low stress tolerance, and social anxiety disorder symptoms with avoidant behavior." Tr. 377. However, Dr. Shields wrote that plaintiff did not present himself on that particular day during their meeting in a way that supported a schizoaffective disorder diagnosis and determined more information was needed. Tr. 377. The state agency consultants determined that plaintiff "was capable of simple tasks and routine workplace changes . . . [but] limited interactions" with supervisors, coworkers, or the public. Tr. 22, 112-23, 127-40. However, as noted above, the state consultants also disregarded Dr. Sturos' opinions because they were not specifically in the form of treatment notes. Tr. 118. 1313-34. Dr. Sturos' opinion is consistent with the other medical opinions, and due to the nature

of his relationship and treatment history with plaintiff, he provided much more information concerning plaintiff's mental health.

Though an ALJ is not required to discuss them, several other factors are considered when evaluating medical opinion evidence. 20 C.F.R. § 404.1520c(c). One factor is the relationship with the claimant. *Id*. at §4041520c(c)(3). This relationship includes considering the length, frequency, purpose, and extent of the treatment relationship, as well as the examining relationship itself. *Id*. Dr. Sturos was the only physician to examine plaintiff on a regular basis, at least monthly since 2015, regarding his mental health. Tr. 331. As the Ninth Circuit recently explained, "[u]nder the revised regulations . . . a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion." *Woods*, 32 F.4th at 792. In conclusion, considering the record as a whole, including the additional evidence, the Court finds that the ALJ erred in evaluating Dr. Sturos' medical opinion evidence.

## III.   Subjective Symptom Testimony

### A.   *Standard of review.*

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of his symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the claimant must produce objective medical evidence of one or more impairments that could reasonably be expected to produce some degree of symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant need not show that the impairment could reasonably be expected to cause the severity of the symptoms, but only show that it could reasonably have caused some degree of the symptoms. *Id.*

Second, the ALJ must assess the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ can reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." *Id.* Thus, the ALJ must specifically identify the testimony that they do not credit and must explain what evidence undermines the testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)*.* In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

General findings are insufficient to support an adverse determination; the ALJ must rely on substantial evidence. *Holohan*, 246 F.3d at 1208*.* To discredit a plaintiff's testimony regarding the degree of impairment, the ALJ must make a "determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The question is not whether ALJ's rationale convinces the court, but whether their rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

B.    *Testimony*

Plaintiff testified that he has been treated for his mental conditions since 2015. Tr. 95. He explained that during a brief job attempt at a pizza shop in 2016, it "lasted three weeks" because his anxiety made it "very hard for [him] to understand even simple tasks and [he] would continue to mess up." Tr. 97-98, He stated that his anxiety sometimes leads him to "self harm a little bit" and punching a wall resulted in a sprained wrist and being fired. Tr. 98. He had to be home schooled because his "grades were slipping due to [his] mental health getting worse . . . ." Tr. 97.

At the hearing, plaintiff stated that he was actively having hallucinations "like I'm in a room full of people talking." Tr. 97. He stated his hallucinations had progressed "to the point

where if [he was] in public, [he] cannot tell the difference between a hallucination and a real person." Tr. 99. He testified that he talks back to and occasionally gets "aggressive" and argues with his hallucinations in public. Tr. 103. He has three to four panic attacks per week, lasting at least an hour. Tr. 99. He testified that he requires frequent reminders from his mother and girlfriend at home to complete simple tasks, such as sweeping floor, doing dishes, brushing his teeth at night, and taking medications. Tr. 100, 102. Plaintiff testified that he takes Buspar, Lamictal, and Seroquel for his mental health conditions. Tr. 101. Though he stated he continues to have hallucinations multiple times a day, as well as anxiety, his symptoms are better on medication because he "know[s] in the times that [he has] missed medication it's so much worse than it is when [he is] getting all [his] medications." Tr. 101-02. He stated that he does not like to socialize because it worsens his anxiety, thus he and his girlfriend primarily stay home. Tr. 102-03. He testified that he does not believe he cannot be competitively employable due to his anxiety and because "at least half of the days in the month" he struggles to get out bed due to depression. Tr. 104.

The ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but plaintiff's "statements about the intensity, persistence, and limiting effects" of his symptoms were "inconsistent because they were not fully supported by the evidence. Tr. 20. In discounting plaintiff's testimony, the ALJ relied on the following rationales: (1) that the testimony conflicts with the medical evidence; and (2) that the testimony conflicts with his daily activities. The Court addresses each rationale in turn.

C.    *Medical Evidence*

An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). While an ALJ may also consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain," *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001), they cannot reject subjective pain testimony solely on that basis. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *see also* 20 C.F.R. § 404.1529(c)(2) (the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

Here, the ALJ concluded that plaintiff's allegations were "not supported by the medical record" because the "record contains sporadic medical treatment, but no mental heath treatment records covering the relevant period." Tr. 20. The ALJ reasoned that plaintiff's "conditions appeared relatively stabled and controlled[,]" that plaintiff's record included "isolated references to anxiety and schizoaffective disorder," but that plaintiff "generally denied mental issues" and "[t]he record does not contain mental health treatment notes." Tr. 20.

However, an ALJ may not selectively cite evidence to support the conclusion that a claimant is not disabled; rather, the ALJ must consider the evidence as a whole. *See Holohan*, 246 F.3d at 1207 ("[T]he ALJ selectively relied on some entries in [the claimant's] records . . . and ignored the many others that indicated continued, severe impairment."); *see also Garrison v. Colvin,* 759 F.3d 955, 1017 (9th Cir. 2014) (noting the cyclical nature of mental health diagnoses and instructing caution in drawing inferences based upon reports of improvements during

treatment). As noted above, the ALJ erred in discrediting Dr. Sturos' evidence, which contains many observations which support plaintiff's testimony. *See e.g.*, Tr. 30-85, 327-38, 382-89, 696-99 (hallucinations, anxiety, depression, paranoia, using guitar as a distraction from symptoms, inability to follow instructions, needing reminders to attend appointments, isolation). Although there are some "normal" observations at unrelated medical visits, their significance is undermined by the fact that plaintiff's extensive mental health record clearly acknowledges plaintiff's mental health problems.

Further, a holistic review of the record supports plaintiff's testimony regarding the severity of his mental health symptoms. He started medication and treatment for his mental health in 2015 with Dr. Sturos. Tr. 382. Dr. Sturos documented plaintiff's history of hallucinations, panic attacks, isolation, depression, and anxiety, which do not conflict with plaintiff's testimony. Tr. 30-85, 327-38, 382-89, 696-99. Viewing the record as a whole, the ALJ lacked substantial evidence to discount plaintiff's mental health symptom testimony based on lack of evidentiary support in the record.

 *D. Activities*

The ALJ also rejected plaintiff's subjective symptom testimony as inconsistent with his reported daily activities and functioning. Tr. 20. Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills"; or (2) where the activities "contradict [a claimant's] testimony." *Orn*, 495 F.3d at 639.

The ALJ concluded that plaintiff's activities were inconsistent with his allegations. Tr. 20. The ALJ noted the following:

> Despite his impairments, the claimant was still able to perform daily tasks and activities. He reported that his depression sometimes caused him to not keep up

with his personal hygiene, but he reported that he had no problems taking care of personal needs. He reported that he was able to prepare meals daily. He reported he performed household chores. He did his own laundry once a week, took out the trash and brought in firewood. He drove a vehicle and went out alone. He shopped in stores and by computer. He visited his grandmother once a week. He occasionally went to the movies with a friend. He watched television a lot and he played the guitar occasionally. (Ex. 5E). He reported his hobbies also included playing video games and watching YouTube. He reported that he drove his girlfriend to and from work. (Ex. 8E).

Tr. 20.

But the ALJ's cursory mention of daily activities fails to explain "what symptom testimony [was] not credible and what facts in the record lead to that conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (quoting *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)). As this Court has repeatedly held, "an ALJ's mere recitation of a claimant's activities is insufficient to support rejection of the claimant's testimony as a matter of law." *Shirley C. v. Comm'r, Soc. Sec. Admin.*, No. 1:20-cv-01212-MK, 2021 WL 3008265, at *6 (D. Or. July 15, 2021). In other words, other than generally identifying these activities, the ALJ failed to explain how plaintiff's activities, such as watching YouTube, undermined plaintiff's subjective symptom testimony. Therefore, this was not a clear and convincing reason to reject plaintiff's testimony. *See David H. v. Comm'r, Soc. Sec. Admin.*, No. 3:19-cv-00571-MK, 2020 WL 1970811, at *4 (D. Or. Apr. 24, 2020) (rejecting ALJ's reliance on claimant's activities where "the ALJ did not explain how these minimal activities undermined [the claimant's] symptom testimony") (citation omitted).

Furthermore, the ALJ's rationale that plaintiff's ability to take care of personal needs, perform chores, and in-public activities like going to the movies or a store undermines his symptom testimony is not supported by substantial evidence. The ALJ ignored plaintiff's testimony as to the limitations of his ability to be in public, take care of himself, and perform

household chores. Plaintiff testified that he required reminders from his mother and girlfriend to perform simple chores and regular grooming, such as brushing teeth and taking medications. Tr. 100, 102. Dr. Sturos reported that plaintiff required reminders to attend appointments and varying ability to follow treatment instructions. Tr. 327, 329, 330. Plaintiff testified that he struggles to leave his house because his anxiety causes hallucinations, which he interacts with and cannot tell the difference between hallucinations and real life. Tr. 99, 103. Nothing about his reported daily activities is inconsistent with the severity of the mental health symptoms he testified to. Therefore, the ALJ did not provide clear and convincing reasons, supported by substantial evidence, for disregarding plaintiff's subjective symptom testimony.

## IV.    Remedy

Plaintiff asserts that this case should be remanded for immediate payment of benefits under the credit-as-true standard. Pl. Br. 28. Applying the requisite standard, for the reasons set forth below, the Court finds that the credit-as-true standard is met.

### A.    Standard of Review

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of the Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

Generally, where "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand," the district court should remand for payment of benefits. *Garrison*, 759 F.3d at 1020.

In conducting this analysis, the district court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.*

Even where all the requisites are met, however, a court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.] *Garrison*, 759 F.3d at 1021. "Serious doubt" can arise when there are "inconsistencies between the claimant's testimony and the medical evidence," or if the Commissioner "has pointed to evidence in the record the ALJ overlooked and explained how that evidence casts serious doubt" on whether the claimant is disabled under the Act. *Dominguez*, 808 F.3d at 407 (internal quotations and citation omitted).

B.      *Analysis*

On the first prong, the Ninth Circuit has held that remanding for proceedings rather than for an immediate payment of benefits serves a useful purpose where "the record has [not] been fully developed [and] there is a need to resolve conflicts and ambiguities." *Treichler*, 775 F.3d at 1101 (internal quotations and citations omitted). Here, plaintiff has already attended and testified at an administrative hearing related to his application. Tr. 88-106. A vocational expert testified as well. Tr. 106-09. Plaintiff's medical record, including the additional evidence, contains his entire mental health history. Tr. 30-85, 327-748. Defendant has failed to "point[] to evidence in the record the ALJ overlooked," *Dominguez*, 808 F.3d at 407, and the Court finds none. The record is therefore fully developed, and there is no need to resolve any conflict or ambiguity.

The second prong is also satisfied because the ALJ committed harmful legal error. As discussed above, the ALJ erred by (1) improperly discrediting Dr. Sturos' opinion as to plaintiff's mental health impairments; and (2) failing to provide clear and convincing reasons, supported by substantial evidence, for discounting plaintiff's symptom testimony related to his mental conditions.

As to the third prong, if the improperly discounted opinion evidence, along with plaintiff's subjective symptom testimony regarding his mental conditions, were credited as true, the ALJ would have to find plaintiff disabled on remand. VE Prutting testified that a hypothetical individual who was absent two or more days or off task 10% or more of the workday would not be employable. Tr. 108. VE Prutting also testified that an individual requiring frequent supervision or one "expected to take . . . inappropriate action at the workplace," such as acting out or punching walls, or was 10% to 15% slower than coworkers at completing a job would not

be employable. Tr. 108-10. Based on the discounted evidence, plaintiff is such a hypothetical individual. Accordingly, the ALJ would be required to find plaintiff disabled on remand.

Considering the record as a whole, the Court finds no reason for serious doubt as to whether plaintiff is disabled. *Garrison*, 759 F.3d at 1020–21 (citations omitted); *see also Revels v. Berryhill*, 874 F.3d 648, 668 n.8 (9th Cir. 2017) (explaining that where each of the credit-as-true factors is met, only in "rare instances" does the record as a whole leave "serious doubt as to whether the claimant is actually disabled") (citing *Garrison*, 759 F.3d at 1021).

Because plaintiff has satisfied the credit-as-true standard and the Court does not have serious doubt as to whether plaintiff is disabled, the Court exercises its discretion to remand this case for an award of benefits.

## CONCLUSION

Based on the foregoing, pursuant to 42 U.S.C. § 405(g), sentence four, the Court the decision of the Commissioner is REVERSED, and this case is REMANDED for calculation and payment of benefits.

IT IS SO ORDERED.

DATED this 29th day of September, 2023.

ANDREW HALLMAN
United States Magistrate Judge